**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ANDRE JOHNSON a/k/a UZI-DRE,**
     Plaintiff,

**v.**                                        Case No.: _8: 26-CV-1724-MSS-NHA_

**JONATHAN MORTIMER SMITH a/k/a LIL JON;**
**BME RECORDINGS, LLC;**
**THE ORCHARD ENTERPRISES NY, INC.;**
**SONY MUSIC ENTERTAINMENT;**
**RESERVOIR MEDIA MANAGEMENT, INC.;**
**CONCORD MUSIC GROUP, INC.;**
**SPOTIFY USA INC.;**
**APPLE INC.;**
**AMAZON.COM SERVICES LLC;**
**GOOGLE LLC d/b/a YOUTUBE; and**
**SOUNDCLOUD, INC.,**
     Defendants.

_____/

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND FALSE**
**DESIGNATION OF ORIGIN UNDER THE LANHAM ACT**

**DEMAND FOR JURY TRIAL**

## I.    INTRODUCTION

**1.**    Plaintiff Andre Johnson, professionally known as **"Uzi-Dre"** (**"Plaintiff"** or **"Johnson"**), proceeding *pro se*, brings this civil action against Defendants for ongoing and continuing infringement of Plaintiff's federally registered copyrights in his original musical album **"Down Deep In The Dirt,"** and for false designation of



origin in violation of Section 43(a) of the Lanham Act. Each Defendant has participated in, contributed to, profited from, or materially assisted the unauthorized reproduction, distribution, public performance, and sale of the musical composition and sound recording entitled "Grand Finale," which incorporates substantial, unlicensed protectable elements of Plaintiff's Copyrighted Works.

2.    Each sale, stream, download, public performance, and distribution of "Grand Finale" within the three-year period preceding the filing of this Complaint constitutes a separate and distinct act of infringement under 17 U.S.C. § 507(b). *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014); *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024). Defendants' infringing conduct is ongoing as of the date of filing, as evidenced by current public listings on Amazon Music, Apple Music, Spotify, YouTube, SoundCloud, Pandora, Deezer, and other commercial platforms.

3.    Plaintiff's federal copyright registration, with an effective date of August 30, 2002, predates the first act of infringement (the November 16, 2004 release of the album "Crunk Juice") by more than two years. Plaintiff is therefore eligible to elect statutory

damages and attorney's fees pursuant to 17 U.S.C. §§ 412, 504(c), and 505. Plaintiff seeks statutory damages, actual damages, disgorgement of Defendants' profits, injunctive relief, costs, attorney's fees as available, and such other relief as this Court deems just and proper, pursuant to 17 U.S.C. §§ 502–05 and 15 U.S.C. § 1117.

## II.   JURISDICTION AND VENUE

4.    This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights), because the claims arise under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*

5.    Supplemental jurisdiction over any related state-law claims, should they be pleaded in amendment, exists pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1400(a). Each Defendant "may be found" in this District because each transacts substantial business in, offers the infringing work

for sale or streaming to residents of, and directs continuous and systematic commercial activity into the Middle District of Florida.

7.   Venue is additionally proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims — namely, the ongoing reproduction, distribution, and public performance of the infringing work to consumers within this District — occurred and continues to occur in this District.

8.   Personal jurisdiction exists over each Defendant under Fla. Stat. § 48.193(1)(a)(1)–(2) and § 48.193(2), and is consistent with the Due Process Clause of the Fourteenth Amendment.

## III.   PARTIES

### A. Plaintiff

9.   Plaintiff Andre Johnson is a natural person, citizen of the United States, and resident of the State of Florida. Plaintiff is a recording artist who performs and records under the professional name "Uzi-Dre." Plaintiff is the sole author and registered copyright owner of the original musical album "Down Deep In The Dirt," published by Plaintiff's independent record label, True Fiends Entertainment. Plaintiff is currently incarcerated at Polk

Correctional Institution, 10800 Evans Road, Polk City, Florida 33868, Department of Corrections Identification Number 458208. Plaintiff proceeds pro se.

## B. The Creator-Artist Defendants

10. Defendant Jonathan Mortimer Smith, professionally known as "Lil Jon" ("Smith"), is, upon information and belief, a natural person and citizen of the State of Georgia. Smith is the credited performing artist, co-writer, and producer of the infringing work "Grand Finale" and, upon information and belief, has received and continues to receive royalties, licensing fees, and other remuneration from its ongoing commercial exploitation. Smith may be served at his last known business address, c/o BME Recordings, LLC, 191 Peachtree Street NE, Suite 3300, Atlanta, Georgia 30303, or at such other address as may be determined through discovery.

11. Defendant BME Recordings, LLC ("BME") is, upon information and belief, a limited liability company organized under the laws of the State of Georgia, with a last known principal place of business at 191 Peachtree Street NE, Suite 3300, Atlanta, Georgia 30303. BME is Smith's record label and was a co-producer,

licensor, and distributor of the album "Crunk Juice," on which the infringing work appears. At all times relevant to this Complaint, BME operated as an independent label affiliated with TVT Records, Inc., which served as BME's distributor and parent commercial entity.

## C. The Successor-Rights Defendants

**12.** Defendant The Orchard Enterprises NY, Inc. ("The Orchard") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 23 East 4th Street, New York, New York 10003. Its registered agent is CT Corporation System, 28 Liberty Street, New York, New York 10005. Upon information and belief, The Orchard acquired from the TVT Records bankruptcy estate, in or about June 2008, the master recording rights and artist contracts associated with "Crunk Juice" and "Grand Finale," and currently acts as the digital distributor of the sound recording, as reflected in current platform metadata identifying the work as "Provided to YouTube by The Orchard Enterprises."

13. Defendant Sony Music Entertainment ("Sony") is, upon information and belief, a general partnership organized under the laws of the State of Delaware, with a principal place of business at 25 Madison Avenue, New York, New York 10010. Its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Upon information and belief, Sony is the parent company of, exercises ownership and operational control over, and profits from the activities of Defendant The Orchard.

14. Defendant Reservoir Media Management, Inc. ("Reservoir") is, upon information and belief, a corporation organized under the laws of the State of Delaware, with a principal place of business at 75 Varick Street, 9th Floor, New York, New York 10013. Its registered agent is The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, in or about April 2010, Reservoir acquired from the TVT Records bankruptcy estate the music publishing assets associated with the infringing work, including the White Rhino Music catalog.

15. Defendant Concord Music Group, Inc. ("Concord") is, upon information and belief, a corporation with a principal place of

business in Nashville, Tennessee, and offices in Glendale, California. Its registered agent is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, California 91203. Upon information and belief, Concord acquired certain master recordings and catalog assets formerly associated with TVT through its affiliate Bicycle Music Company.

### D. The Digital Platform Defendants

16. Defendant Spotify USA Inc. ("Spotify") is a corporation organized under the laws of the State of Delaware, with a principal place of business at 150 Greenwich Street, 62nd Floor, New York, New York 10007. Its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Spotify operates the Spotify streaming service, on which "Grand Finale" and the album "Crunk Juice" are currently available for on-demand streaming.

17. Defendant Apple Inc. ("Apple") is a corporation organized under the laws of the State of California, with a principal place of business at One Apple Park Way, Cupertino, California 95014. Its registered agent is CT Corporation System, 330 N. Brand

Boulevard, Suite 700, Glendale, California 91203. Apple operates the Apple Music and iTunes services, on which "Grand Finale" is currently available for digital purchase, download, and streaming.

18. Defendant Amazon.com Services LLC ("Amazon") is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Amazon operates the Amazon Music service and the Amazon.com retail platform, on which "Grand Finale" and the album "Crunk Juice" are currently available for digital purchase, streaming, and sale (in physical format).

19. Defendant Google LLC, doing business as YouTube ("YouTube"), is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. YouTube operates the YouTube and YouTube Music services, on which "Grand Finale" is currently available for streaming and download.

**20.** Defendant SoundCloud, Inc. ("SoundCloud") is, upon information and belief, a corporation organized under the laws of the State of Delaware, with a principal place of business at 155 Avenue of the Americas, 10th Floor, New York, New York 10013. Its registered agent is The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. SoundCloud operates the SoundCloud streaming service, on which "Grand Finale" is currently available for streaming.

## IV.    FACTUAL ALLEGATIONS

### A. Plaintiff's Original Album "Down Deep In The Dirt"

**21.** In or about the year 2000, Plaintiff independently created, composed, arranged, recorded, and produced an original musical album entitled "Down Deep In The Dirt" (the "Album"), comprising thirteen (13) original tracks reflecting Plaintiff's independent creative choices in composition, melody, rhythm, instrumental production, lyrical content, conceptual themes, and sound-recording arrangement.

**22.** The Album is structured around two thematic bookends — the first track, entitled **"Intro,"** and the closing thirteenth track,

entitled **"Outtro"** (collectively, the **"Copyrighted Works"**) — which together frame the substantive content of the Album. Each of the Copyrighted Works constitutes an original work of authorship fixed in a tangible medium of expression within the meaning of 17 U.S.C. § 102, and each reflects Plaintiff's independent and protectable creative expression in beat, melody, lyrical and spoken content, conceptual subject matter, and album-level structural placement.

23. The Album was first published on or about May 20, 2001, on physical compact disc by Plaintiff's independent record label, True Fiends Entertainment, and was thereafter offered for distribution and sale to consumers in the United States, including through the retail channel maintained by Amazon.com (Amazon Standard Identification Number B000096JH9). Editorial and product information published in connection with the Album, including a review attributed to Adam Indanvino of Lee Entertainment dated April 12, 2003, has been continuously available to the public on Amazon.com's commercial website.

24. Plaintiff timely applied for, and was issued by the Register of Copyrights, a certificate of registration covering the Copyrighted Works, bearing United States Copyright Office

Registration No. **PAu002770907**, with an effective date of registration of **August 30, 2002**, and a date of creation of **2000**. The certificate identifies the type of work as music, the description as compact disc, and the copyright claimant as "Andre Johnson, 1976- (a.k.a. Uzi-Dre)." Plaintiff is the sole owner of the exclusive rights enumerated at 17 U.S.C. § 106 with respect to the Copyrighted Works.

**25.** Plaintiff's registration satisfies the registration prerequisite to suit under 17 U.S.C. § 411(a). *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019). The registration constitutes *prima facie* evidence of the validity of the copyrights and of the facts stated therein, including authorship, pursuant to 17 U.S.C. § 410(c). Because the effective date of registration (August 30, 2002) predates the first act of infringement alleged herein (the November 16, 2004 release of "Crunk Juice") by more than two years, Plaintiff is fully eligible to elect statutory damages and attorney's fees pursuant to 17 U.S.C. §§ 412, 504(c), and 505.

## B. Plaintiff's Submission of the Album to TVT Records and Defendants' Access

**26.** In or about the middle of the year 2004, Plaintiff submitted a copy of the Album "Down Deep In The Dirt," containing the Copyrighted Works, to TVT Records, Inc. ("TVT"), a then-active record label headquartered at 23 East Fourth Street, 3rd Floor, New York, New York 10003, for review in connection with a possible production-and-distribution arrangement.

**27.** Plaintiff's submission to TVT was made through the United States Postal Service and was authorized and facilitated through Corbin Grimes, then Chief Executive Officer of Capital Imaging Group ("C.I.G."), an entity that, at the relevant time, served as a recognized intermediary between independent recording artists and TVT Records for purposes of catalog review and possible label deals. Plaintiff acted in reliance upon that authorized intake channel.

**28.** Plaintiff's submission was thereafter received and processed within TVT by its Artists & Repertoire ("A&R") representative, Jake Conners, in his capacity as the TVT representative responsible for evaluating new musical material submitted to the label. Mr. Conners and TVT were on actual notice

that the submitted Album contained Plaintiff's original copyrighted material.

29. At the relevant time, TVT was the parent commercial label overseeing the distribution and exploitation of recordings released through Defendant BME Recordings, the independent label of Defendant Smith (Lil Jon). Through this corporate and commercial relationship between TVT and BME, Smith and BME obtained access — directly or through TVT's sharing of submitted material with affiliated labels and producers — to Plaintiff's Copyrighted Works in or about mid-2004, before the November 16, 2004 release of "Crunk Juice."

30. Plaintiff did not grant, transfer, license, or assign to TVT, to Capital Imaging Group, to Mr. Grimes, to Mr. Conners, to Smith, to BME, or to any other person or entity, the right to reproduce, distribute, publicly perform, or prepare derivative works from the Copyrighted Works. Plaintiff's submission to TVT was for evaluation and possible licensing only; no license, authorization, or transfer of rights was ever granted, executed, or even discussed.

## C. The Unauthorized Incorporation Into "Grand Finale"

31.  On or about November 16, 2004 — approximately six (6) months after Plaintiff's mid-2004 submission of the Album to TVT — Lil Jon & The East Side Boyz released the album "Crunk Juice" through TVT Records and BME Recordings. The seventeenth and final track of "Crunk Juice" is entitled "Grand Finale" and is credited to Lil Jon & The East Side Boyz featuring Bun B, Fat Joe, Ice Cube, Nas, and T.I. (with Jadakiss appearing on certain releases in place of Fat Joe), with a running time of approximately 6:48 (the "Infringing Work").

32.  Without Plaintiff's knowledge, authorization, license, or consent, Defendant Smith, acting individually and through Defendant BME, and through TVT, incorporated substantial protectable portions of the Copyrighted Works into the Infringing Work.

33.  Upon information and belief, the Infringing Work has been registered with the United States Copyright Office in two components: the musical work, bearing Registration No. PA0001258671 (with claimants including White Rhino Music); and the sound recording of the album "Crunk Juice," bearing Registration No. SR0000356502 (with TVT Records as the original

claimant). Neither registration identifies Plaintiff as an author or contributor, nor does either registration reflect any license or authorization from Plaintiff.

34.    The combination of (a) Plaintiff's documented submission of the Album to TVT through C.I.G. in mid-2004, (b) the corporate relationship between TVT and BME at the relevant time, and (c) the substantial similarity between the Copyrighted Works and the Infringing Work — released approximately six months after the submission — establishes both *access* and *substantial similarity*, the two elements of unlawful copying. *See, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000); *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002).

## D. The Specific Protectable Elements Appropriated

35.    The infringement is not generalized but particularized. The Infringing Work appropriates four discrete categories of protectable expression from the Copyrighted Works:

(a)    ***Beat*** — the underlying instrumental production track, including the percussive pattern, instrumentation, and rhythmic foundation of the Copyrighted Works;

**(b)**    *Melody* — the melodic and harmonic structure underlying the Copyrighted Works, including the distinctive musical phrases that constitute the heart of Plaintiff's composition;

**(c)**    *Concept* — the thematic and conceptual content of the Copyrighted Works, including their distinctive use of speech-style delivery as a representational frame for the body of the Album, and the substantive subject matter expressed through that frame; and

**(d)**    *Album-Level Structural Placement* — the distinctive structural use of the Copyrighted Works as the opening and closing tracks of the Album, framing the entire body of work. The Infringing Work mirrors this structural placement: "Grand Finale" is positioned as the final, climactic track of "Crunk Juice," and the very title "Grand Finale" evokes the concluding-bookend role that "Outtro" occupies on Plaintiff's Album.

36. These four categories of appropriated material include both quantitatively substantial portions of the Copyrighted Works and qualitatively the most distinctive and recognizable features of

Plaintiff's authorship. The substantial similarity between the Infringing Work and the Copyrighted Works is not the product of coincidence or independent creation; it is the product of direct, unauthorized copying made possible by the documented mid-2004 submission of the Album to TVT.

### E. Chain of Title Following TVT Records' 2008 Bankruptcy

37. On or about February 19, 2008, TVT filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-10534 (ALG).

38. Upon information and belief, in or about June 2008, Defendant The Orchard acquired from the TVT bankruptcy estate the master recording rights and artist contracts associated with "Crunk Juice" and "Grand Finale," including the exclusive right (subject to whatever infirmities existed in TVT's original chain of title, and without prejudice to Plaintiff's rights) to reproduce, distribute, publicly perform, and digitally transmit the sound recording of the Infringing Work.

**39.** Upon information and belief, Defendant Sony is the parent company of Defendant The Orchard, exercises operational and financial control over The Orchard, and profits from The Orchard's exploitation of the Infringing Work.

**40.** Upon information and belief, in or about April 2010, Defendant Reservoir acquired from the TVT bankruptcy estate the music publishing assets associated with the Infringing Work, including the White Rhino Music catalog, and has since administered those rights and collected the publishing royalties attributable to "Grand Finale."

**41.** Upon information and belief, Defendant Concord, through its affiliate Bicycle Music Company, acquired certain master recordings and catalog assets formerly associated with TVT, and holds some portion of the rights in or to the "Crunk Juice" catalog.

**42.** No Defendant in this chain of title obtained any greater rights in the Copyrighted Works than TVT itself possessed, and TVT possessed no right, license, or authorization to use, reproduce, distribute, or publicly perform the Copyrighted Works — it had received them only as a submission for review through C.I.G. The

Successor-Rights Defendants therefore hold, at most, rights to an unlicensed derivative work, and their continued exploitation of that derivative work constitutes ongoing infringement of Plaintiff's copyrights.

## F. Ongoing Distribution, Sale, and Public Performance

43. The Infringing Work is not a historical artifact. As of the date of filing of this Complaint, the Infringing Work is actively offered for sale, distribution, digital download, on-demand streaming, and public performance by Defendants and their licensees to consumers throughout the United States, including in this District.

44. Contemporaneous evidence — including publicly accessible listings captured in Plaintiff's possession and available for evidentiary submission — confirms that, within the thirty (30) days preceding the filing of this Complaint, the Infringing Work was available through at least the following commercial channels:

   a. Amazon Music — digital purchase;

   b. Apple Music and iTunes — digital purchase, download, and streaming;

c. YouTube Music and YouTube — ad-supported and subscription streaming and download;

d. Spotify — on-demand streaming of the album track;

e. SoundCloud — streaming of the album version;

f. Deezer and Pandora — streaming;

g. Amazon.co.uk — sale of the "Crunk Juice [Double Disc Edition]" physical compact disc; and

h. various independent retailers, including Disc Jockey Music Store and RareVinyl.com.

**45.** The current YouTube listing of "Grand Finale" expressly identifies Defendant The Orchard Enterprises as the present-day provider of the recording, stating: "Provided to YouTube by The Orchard Enterprises." This admission is contemporaneous, public, and dispositive of the role of The Orchard in the ongoing digital distribution of the Infringing Work.

**46.** Each on-demand stream, download, sale, and public performance of the Infringing Work from and after three (3) years before the filing of this Complaint constitutes a discrete act of infringement, giving rise to a distinct claim that accrues independently under 17 U.S.C. § 507(b). *Petrella v. Metro-Goldwyn-*

*Mayer, Inc.*, 572 U.S. 663 (2014); *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024). Plaintiff's claims with respect to such acts are timely without regard to when the infringing series of acts began.

## G. Prior Proceedings and Absence of Preclusion

**47.** Plaintiff has previously filed three civil actions in the United States District Court for the Middle District of Florida that bear some factual relation to the present subject matter, all of which were dismissed *without prejudice* on procedural grounds and none of which constituted an adjudication on the merits or a strike under 28 U.S.C. § 1915(g):

(i) Case No. 8:05-CV-1726, dismissed without prejudice;

(ii) Case No. 8:05-CV-1812, dismissed without prejudice; and

(iii)    Case No. 8:10-CV-00990-VMC-AEP, *Johnson v. Smith, et al.*, dismissed without prejudice on July 20, 2011, for failure to effect service on TVT and failure to timely apply for entry of clerk's default under Local Rule 1.07(b). Plaintiff's subsequent Motion to Vacate under

Federal Rule of Civil Procedure 60(b)(6) was denied in 2026.

**48.** Each of the prior dismissals was without prejudice and on procedural rather than merits grounds. Under Federal Rule of Civil Procedure 41(b), a dismissal "other than a dismissal for lack of jurisdiction, improper venue, or failure to join a party under Rule 19" operates as an adjudication on the merits only "unless the dismissal order states otherwise." *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001). The prior dismissals therefore have no claim-preclusive effect.

**49.** Moreover, nine (9) of the eleven (11) Defendants in this action — The Orchard, Sony, Reservoir, Concord, Spotify, Apple, Amazon, Google/YouTube, and SoundCloud — were not parties to any prior action. No preclusion doctrine bars claims against parties not previously before the Court.

**50.** Most fundamentally, the present action is grounded on discrete acts of infringement occurring within the three (3) years preceding the filing of this Complaint. Those acts did not exist, and could not have been litigated, in any prior proceeding; they are new claims arising from new conduct.

## V.    CLAIMS FOR RELIEF

### COUNT I
### DIRECT COPYRIGHT INFRINGEMENT — 17 U.S.C. § 501
*(Against All Defendants)*

**51.**  Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

**52.**  Plaintiff is the sole owner of valid copyrights in the Copyrighted Works, as evidenced by Registration No. PAu002770907 issued by the United States Copyright Office, which is prima facie evidence of validity and ownership pursuant to 17 U.S.C. § 410(c).

**53.**  Defendants, without license, authorization, or consent, have reproduced the Copyrighted Works (17 U.S.C. § 106(1)), prepared a derivative work based upon the Copyrighted Works (17 U.S.C. § 106(2)), distributed copies of the Copyrighted Works to the public (17 U.S.C. § 106(3)), publicly performed the Copyrighted Works (17 U.S.C. § 106(4)), and, in the case of the sound-recording components, digitally transmitted the Copyrighted Works (17 U.S.C. § 106(6)).

**54.** Each such act of reproduction, distribution, public performance, or digital transmission occurring within the three (3) years preceding the filing of this Complaint constitutes a separate and timely act of direct copyright infringement within the meaning of 17 U.S.C. § 501.

**55.** Defendants' acts of infringement are knowing and willful within the meaning of 17 U.S.C. § 504(c)(2). Defendants Smith and BME had actual knowledge of Plaintiff's authorship by virtue of the documented mid-2004 submission of the Album to TVT through Capital Imaging Group. The Successor-Rights Defendants had at minimum constructive knowledge by virtue of the public docket of the 2010 action and the bankruptcy-acquirer's duty of due diligence in catalog acquisition.

**56.** Plaintiff has suffered, and continues to suffer, substantial damages as a direct and proximate result of Defendants' infringement, including lost licensing revenue, diminished market for the Copyrighted Works, and loss of the exclusive rights conferred by the Copyright Act.

**57.** Because Plaintiff's registration predates the first act of infringement (the November 16, 2004 release of "Crunk Juice") by

more than two years, Plaintiff is entitled to elect, pursuant to 17 U.S.C. §§ 412 and 504(c), statutory damages of up to $150,000 per infringed work for willful infringement, or alternatively, his actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b); costs and attorney's fees as available pursuant to 17 U.S.C. § 505; and preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

## COUNT II
### CONTRIBUTORY COPYRIGHT INFRINGEMENT
*(Against BME, The Orchard, Sony, Reservoir, Concord, Spotify, Apple, Amazon, YouTube, and SoundCloud)*

**58.** Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

**59.** A defendant is liable for contributory copyright infringement where it, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990).

**60.** Knowledge of the Successor-Rights Defendants. Each of the Successor-Rights Defendants — BME, The Orchard, Sony,

Reservoir, and Concord — has had actual or red-flag knowledge of the infringing nature of the Infringing Work at all times relevant to this Complaint, by virtue of: (a) the prior 2010 action of which Defendants Smith and BME had actual notice and which has been a matter of public docket record ever since; (b) the fact that each Successor-Rights Defendant acquired the relevant rights from the distressed TVT Records bankruptcy estate, circumstances that place a sophisticated music-industry acquirer on inquiry notice of chain-of-title risks in the acquired catalog and trigger an obligation of reasonable due diligence that would have disclosed Plaintiff's claim; and (c) the public-facing platform metadata identifying The Orchard as present-day distributor of the recording ("Provided to YouTube by The Orchard Enterprises").

**61.** Knowledge of the Digital Platform Defendants — The DMCA Notice Event. Contemporaneously with the filing of this Complaint, Plaintiff served on each of the Digital Platform Defendants — Spotify, Apple, Amazon, Google/YouTube, and SoundCloud — a formal Notice of Claimed Infringement pursuant to 17 U.S.C. § 512(c)(3). Each such notice (a) identifies Plaintiff as the copyright owner and provides contact information; (b) specifically

identifies the Copyrighted Works and federal copyright registration number PAu002770907; (c) specifically identifies the infringing material and its location on the recipient's service; (d) contains the good-faith-belief statement required by 17 U.S.C. § 512(c)(3)(A)(v); and (e) is signed under penalty of perjury pursuant to 17 U.S.C. § 512(c)(3)(A)(vi). Each notice satisfies every element of § 512(c)(3) and, upon receipt by the recipient Platform Defendant, operates to impute *actual knowledge* of the specific infringing activity to that Platform Defendant.

**62.** Post-Notice Liability of the Digital Platform Defendants. From and after the date on which each Platform Defendant received its § 512(c)(3) notice, any continued hosting, transmission, reproduction, distribution, public performance, or sale of the Infringing Work by that Platform Defendant (a) constitutes contributory infringement with actual knowledge; (b) forfeits the safe-harbor defense provided by 17 U.S.C. § 512(c) as to the material identified in the notice, because § 512(c)(1)(C) conditions the safe harbor on the service provider's expeditious removal or disablement upon obtaining knowledge; and (c) gives rise to a separately-accruing claim for each discrete act occurring thereafter

pursuant to the separate-accrual rule of *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). Plaintiff's primary damages theory against each Platform Defendant is anchored to the post-notice window.

**63.** Pre-Notice Red-Flag Liability of the Digital Platform Defendants. Without limiting the foregoing, Plaintiff further alleges that each Platform Defendant was, for some period prior to receipt of the § 512(c)(3) notice, aware of facts and circumstances from which the infringing nature of the Infringing Work would have been objectively apparent to a reasonable service provider in the same position, within the meaning of 17 U.S.C. § 512(c)(1)(A)(ii). Such red-flag circumstances include the public docketed pendency of the 2010 action in this District and the platform metadata identifying a specific catalog acquirer whose chain of title is derived from the 2008 TVT bankruptcy estate.

**64.** Material Contribution. Each Defendant named in this Count has materially contributed to the ongoing direct infringement by the other Defendants, by: (a) providing the platforms, catalogs, distribution channels, and commercial infrastructure without which the Infringing Work could not be reproduced, distributed, streamed,

sold, or publicly performed; (b) ingesting, hosting, encoding, and transmitting the Infringing Work; (c) accepting and disbursing royalty flows attributable to the Infringing Work; and (d) offering the Infringing Work for sale, download, and streaming to the public.

65.  Plaintiff is entitled to the same categories of relief specified in Count I with respect to Defendants' contributory infringement.

## COUNT III
### VICARIOUS COPYRIGHT INFRINGEMENT
*(Against BME, The Orchard, Sony, Reservoir, Concord, Spotify, Apple, Amazon, YouTube, and SoundCloud)*

66.  Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

67.  A defendant is liable for vicarious copyright infringement where it has the right and ability to supervise the infringing conduct and also has a direct financial interest in such activities. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 & n.9 (2005). Unlike contributory liability, vicarious liability does not require proof of knowledge of the infringing activity.

**68.** Each of the Successor-Rights Defendants has the right and ability to supervise exploitation of the Infringing Work — including the right to withdraw it from commerce, to decline licensing, and to exercise administrative control over its use — and derives direct financial benefit from its continued exploitation in the form of master-recording royalties, publishing royalties, and/or catalog licensing revenue.

**69.** Each of the Digital Platform Defendants has the right and ability to remove, suppress, or block the Infringing Work from its service, and derives a direct financial benefit from the presence of the Infringing Work on its platform in the form of subscription revenue, advertising revenue, platform fees, and enhanced user engagement. The Infringing Work is a track on a commercially significant album attributed to a well-known recording artist, drawing traffic and attendant revenue to each service that offers it.

**70.** Although proof of knowledge is not a required element of vicarious liability, Plaintiff notes that the § 512(c)(3) notices served contemporaneously with this Complaint eliminate any residual good-faith basis for the Platform Defendants' continued exploitation of the Infringing Work from the date of notice forward. Any attempt

by a Platform Defendant to invoke the DMCA safe harbor as a defense will fail for the same reasons set forth in Count II.

71. Plaintiff is entitled to the same categories of relief specified in Count I with respect to Defendants' vicarious infringement.

## COUNT IV

### FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

*(Against Smith, BME, The Orchard, Sony, Reservoir, and Concord)*

72. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

73. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits, inter alia, the use in commerce of any false or misleading description of fact, or false or misleading representation of fact, which "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

74. The Lanham Act-covered Defendants, in their commercial advertising and promotion of the album "Crunk Juice" and the Infringing Work "Grand Finale," have made and continue to make material false or misleading representations of fact concerning the

nature, characteristics, and qualities of the goods they offer in commerce — specifically, by representing to consumers and to the trade that the Infringing Work is the original creation of the credited writers and producers, when in fact it contains substantial unlicensed material of Plaintiff's authorship.

75. These misrepresentations are likely to, and do, deceive a substantial segment of the relevant consuming public as to the nature, composition, and authorship of the goods offered, and are material to consumers' purchasing decisions in the marketplace for recorded music.

76. Plaintiff, who records and publishes music under the professional name "Uzi-Dre" and through his label True Fiends Entertainment, is a commercial participant in the market for recorded music and has suffered and will continue to suffer competitive injury, lost sales, lost licensing opportunities, and damage to his commercial reputation as a direct and proximate result of these misrepresentations.

77. Plaintiff is entitled to recover Defendants' profits, Plaintiff's actual damages (subject to the Court's discretion to treble pursuant to 15 U.S.C. § 1117(a)), costs, and — upon a showing of

exceptional circumstances — attorney's fees, together with injunctive relief pursuant to 15 U.S.C. § 1116.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Andre Johnson respectfully prays that this Court enter judgment against each Defendant, jointly and severally where permitted by law, and grant the following relief:

A.    A preliminary and permanent injunction, pursuant to 17 U.S.C. § 502 and 15 U.S.C. § 1116, enjoining Defendants and all those in active concert or participation with them from any further reproduction, distribution, public performance, digital transmission, sale, or offering for sale of the Infringing Work "Grand Finale" in any format;

B.    An order directing the impoundment and destruction or other reasonable disposition, pursuant to 17 U.S.C. § 503, of all copies of the Infringing Work, and of all masters, molds, matrices, plates, films, negatives, and other articles by means of which such copies may be reproduced;

C.    Statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the statutory maximum per work infringed, with enhancement for willful infringement;

D.    In the alternative, at Plaintiff's election, Plaintiff's actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b);

E.    Defendants' profits, Plaintiff's actual damages, and enhanced damages pursuant to 15 U.S.C. § 1117(a);

F.    Costs of this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a), and attorney's fees to the extent available;

G.    Pre-judgment and post-judgment interest at the maximum rate permitted by law;

H.    An accounting of all revenue attributable to the Infringing Work received by each Defendant; and

I.    Such other and further relief as this Court deems just and proper.

## VII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury, pursuant to Federal Rule of

Civil Procedure 38(b), on all issues so triable.

Respectfully submitted,

Dated: 6/9/26 , 2026

Andre Johnson a/k/a Uzi-Dre
DC # 458208
Polk Correctional Institution
10800 Evans Road
Polk City, Florida 33868
Plaintiff, Pro Se